UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KESHON B. WILLIAMS,

          Petitioner,

v.                                Case No. 3:20-cv-1428-BJD-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

          Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Keshon B. Williams, an inmate of the Florida penal system, initiated this action on November 9, 2020,[1] by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc. 1) in the United States District Court for the Northern District of Florida.[2] He also filed a Memorandum of Law (Memorandum; Doc. 2). The Northern District of Florida transferred the case to this Court. Order (Doc. 4). In the Petition, Williams challenges a 2016 state court (Duval County, Florida) judgment of conviction for attempted murder in the second degree (count one), two counts

_____

[1] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

of aggravated assault (counts two and three), and possession of a firearm by a convicted felon (count four). He raises four grounds for relief. <u>See</u> Petition at 2-6. Respondents submitted an Answer to Petition for Writ of Habeas Corpus (Response; Doc. 15). They also submitted an Appendix with Exhibits A-R.[3] <u>See</u> Doc. 15. Williams filed a brief in reply (Reply; Doc. 22).

## II. Relevant Procedural History

On April 6, 2015, the State of Florida charged Petitioner by information in Case No. 2015-CF-1933 with possession of a firearm by a convicted felon. Ex. A at 12. The State of Florida later filed a third amended information charging attempted murder in the second degree, two counts of aggravated assault, and possession of a firearm by a convicted felon. <u>Id.</u> at 36-37. The State filed notices of intent to classify Petitioner as a prison release reoffender (PRR) and a habitual felony offender (HFO). <u>Id.</u> at 26, 27, 39, 83, 96, 97. The court conducted a jury trial on February 16, 2016, and February 18-19, 2016. Ex. B; Ex. C. The jury returned a verdict of guilty as charged as to all counts. Ex. A at 40-44; Ex. C at 446-67, 473-74. Through counsel, Petitioner filed a Motion for New Trial. Ex. A at 81-82. The trial court denied the motion. <u>Id.</u> at 118, 131.

---

[3] The Court refers to the exhibits contained in the Appendix with Exhibits (Doc. 15) as "Ex." and references the page number in the bottom center of the page, if available, otherwise the Court refers to the page number on the document itself.

On March 16, 2016, the trial court sentenced Petitioner to thirty years in prison for counts one and four and ten years in prison on counts two and three, all counts to run concurrently. Ex. A at 87-92, 150. For counts one through three, the court sentenced Petitioner as a PRR and an HFO. Id.

Petitioner appealed, id. at 122, raising one issue: "the court erred in denying the motion for judgment of acquittal as to the charges of aggravated assault because there was no evidence of a threat directed at the two bystanders alleged to be victims." Ex. G at i. Additional briefing followed. Ex. H; Ex. I. The First District Court of Appeal (First DCA) affirmed Petitioner's conviction and sentence finding the trial court correctly denied the motion for judgment of acquittal. Ex. J; Williams v. State, 238 So. 3d 915 (Fla. 2018). The mandate issued on March 21, 2018. Ex. K.

During the pendency of the direct appeal, Petitioner, through counsel, filed a Rule 3.800(b)(2) motion to correct sentencing error. Ex. E at 1-4. The trial court entered an amended order granting the motion and striking Petitioner's designation as an HFO in count one. Id. at 17-28. On October 3, 2016, the trial court entered a corrected judgment and sentence nunc pro tunc to March 16, 2016. Ex. F.

Petitioner filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on May 11, 2018. Ex. L at 1-18.[4] On March 4, 2019, the trial court entered an order denying Petitioner's motion for postconviction relief. Id. at 19-22. In its order, the court set forth the applicable law regarding postconviction claims of ineffective assistance of counsel, citing Strickland v. Washington, 466 U.S. 668 (1984). Ex. L at 19-20. The court attached portions of the record to its order. Id. at 23-41.

Petitioner filed a notice of appeal. Id. at 42-43. He filed a pro se brief. Ex. M. The State filed a notice of filing no answer brief. Ex. N. On October 15, 2019, the First DCA affirmed per curiam the trial court's decision without a written opinion. Ex. O. Williams v. State, 282 So. 3d 53 (Fla. 1st DCA 2019). The mandate issued on November 12, 2019. Ex. P.

Petitioner also filed a state petition for writ of habeas corpus alleging the ineffective assistance of appellate counsel. Ex. Q. On September 24, 2018, the First DCA denied the petition. Ex. P.

---

[4] In reciting the procedural history, the Court identifies the date of Petitioner's filings giving him the benefit of the mailbox rule.

### III. One-Year Limitations Period

Respondents calculate the Petition was timely filed. Response at 4-5. This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is

unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As

explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

8

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C.

9

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

10

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland, 466 U.S. at 687).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test

14

before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not

15

> disturb a state-court decision denying the claim.
> Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Petitioner alleges he received the ineffective assistance of counsel with respect to counsel's failure to move for a new trial under the theory that the weight of the evidence did not support the convictions for aggravated assault. Petition at 2. In ground one of his postconviction motion, Petitioner alleged a comparable claim of ineffective assistance of counsel. Ex. L at 11-14.

Petitioner's ineffectiveness claim is without merit. The postconviction court found defense counsel did file a motion for new trial setting forth specific

16

grounds and the claim of ineffectiveness was without merit. Ex. L at 20. The First DCA affirmed. Ex. O. As such, AEDPA deference is due.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. The record shows the following. After the State rested, defense counsel, Ms. Tricia Rado, moved for a judgment of acquittal. Ex. C at 343-55. She specifically addressed counts two and three in her argument. Id. at 347-54. The court denied the motion noting, "[i]t's close. It's very close." Id. at 354. Ms. Rado renewed the motion for judgment of acquittal, which was denied. Id. at 371-72. Of import, the motion for new trial included claims that the trial court

17

erred in not granting the motion for judgment of acquittal made at the close of the State's case and at the close of all of the evidence. Ex. A at 81. In addition, counsel argued the verdict was contrary to the weight of the evidence and contrary to the law. Id.

To prevail on a claim of ineffective assistance of counsel claim, a petitioner must demonstrate both deficient performance and prejudice. The Court is not convinced that Ms. Rado performed deficiently under these circumstances. Even assuming arguendo deficient performance by counsel, Petitioner has not shown any resulting prejudice. Petitioner has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had performed differently. Indeed, the First DCA found the trial court correctly denied the motion for judgment of acquittal as "a reasonable jury could find Williams had an apparent ability to do harm and that his firing the rifle and trying to kill someone would create a well-founded fear that violence was imminent." Ex. J at 3. For all of the foregoing reasons, Petitioner is not entitled to habeas relief on the claim in Ground One.

## B. Ground Two

As Ground Two, Petitioner alleges "[c]ounsel's failure to alert the court to Petitioner[']s highly questionable Mental Health." Petition at 4. In ground

two of his postconviction motion, Petitioner alleged a similar claim of ineffective assistance of counsel.  Ex. L at 14-16. He alleged defense counsel rendered ineffective assistance by failing to have Petitioner's competency at the time of the crime evaluated. Id. He described going through a rough period of life, being unemployed, unable to provide for his children, turning to prescription drugs, alcohol, and cocaine, and dealing with depression and suicidal thoughts. Id. at 14-15. He described ingesting prescription medication, alcohol, and cocaine prior to the time of his arrest. Id. at 15. He believed that he may not have been insane, but asserted he was without the ability to form specific intent to commit the crimes. Id.

In his Memorandum, Petitioner bifurcated Ground Two into two parts: Part One – counsel was ineffective for failure to have the issue of his competency raised and evaluated, and Part Two – counsel failed to properly convey a plea offer. Memorandum at 4-6. Respondents contend that Petitioner did not properly exhaust the ineffectiveness claim in the state courts as to Ground Two, Part Two, and therefore this particular claim is procedurally defaulted. Response at 25-26.

The Court finds Petitioner did not exhaust the claim raised in Ground Two, Part Two. Because any future attempt to exhaust it would be futile, the

claim is procedurally defaulted. As Petitioner is procedurally barred from raising Ground Two, Part Two, he must demonstrate cause and prejudice. Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claim on its merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that the claim in Ground Two, Part Two, is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of Ground Two, Part Two.

That leaves Ground Two, Part One, for the Court's consideration. Respondents concede that Petitioner exhausted his state court remedies by raising this ineffective assistance of counsel claim by asserting it in ground two of his motion for postconviction relief, and by raising it on appeal from the denial of postconviction relief. Response at 25.

The postconviction court addressed this ground finding:

> In the Defendant's second ground for relief, he alleges *that counsel rendered ineffective assistance for failing to have the Defendant evaluated for competency. The Defendant avers, at the time of the crime: he was unemployed; unable to provide for his children; was using prescription drugs, alcohol and cocaine to self-*

20

*medicate; he was dealing with thoughts of suicide; he was depressed; and "although may not have been legally insane at the time, he was definitely without the ability to form the specific intent to commit the crimes."* A claim of "voluntary intoxication" defense was abrogated in 1999 when Florida Statutes, section 775.051 came into effect. This statute states that: voluntary intoxication resulting from the consumption, injection, or other use of alcohol or other controlled substance as described in chapter 893 is not a defense to any offense proscribed by law. Evidence of a defendant's voluntary intoxication is not admissible to show that the defendant lacked the specific intent to commit an offense and is not admissible to show that the defendant was insane at the time of the offense, except when the consumption, injection, or use of a controlled substance under chapter 893 was pursuant to a lawful prescription issued to the defendant by a practitioner as defined in s. 893.02. Section 775.051, Florida Statutes (2006). The statute excludes introduction of evidence of voluntary intoxication at trial. Troy v. State, 948 So. 2d 635, 644-45 (Fla. 2006); Barrett v. State, 862 So. 2d 44, 46-48 (Fla. 2d DCA 2003). The purpose of this statute is to make those who choose to become intoxicated responsible for their actions, and has been held constitutional. Troy, 948 So. 2d at 664-645; Barrett, 862 So. 2d at 46-48. In review of the instant motion and the record, the Defendant fails: to indicate or reflect, he has ever been diagnosed with a mental illness or any condition that would impact his ability to understand the proceedings or assist counsel; and fails to allege specific legal facts showing that a reasonably competent attorney would have questioned competence to proceed and set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to the Defendant's competency. History of drug abuse, depression, and

21

> aggressive, rebellious behavior do not raise a valid
> question as to his competency to stand trial. Also, if
> attempting to allege trial court error for failure to
> make a competency determination, this argument is
> procedurally barred from being raised in a
> postconviction motion. Therefore, this claim is without
> merit.

Ex. L at 20-21. The postconviction court denied relief and the First DCA per curiam affirmed the denial of relief without a written opinion. Ex. O.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. His ineffectiveness claim is without merit because he has shown neither

deficient performance nor resulting prejudice. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Two, Part One.

As noted by the state court, Petitioner does not allege or intimate that he suffers from or has been diagnosed with a mental illness or that his counsel failed to discover some mental health history. Upon review of the trial record, there is nothing in the record supporting a contention that Petitioner was unable to assist counsel, understand the proceedings, or fully participate in trial preparation or trial. Indeed, the record shows that Petitioner made the decision not to wear street clothes, decided not to take the stand, and confirmed that his counsel had called the only witness Petitioner wanted called. Ex. C at 367-371. On the record, Petitioner stated he was "very satisfied" with his counsel's representation and there were no further witnesses or evidence that he wanted produced or introduced. Id. at 370. The record shows that Petitioner was present for the state court proceedings, conferred with his counsel, and behaved appropriately, without exhibiting unsavory conduct or making any undue outbursts in the courtroom.

To the extent Petitioner contends he was not competent at the time of the crime, the state court rejected this contention noting that Petitioner admitted that "he may not have been legally insane" but was voluntarily

23

intoxicated with multiple substances and was depressed. As such, his condition was "not admissible to show that the defendant lacked the specific intent to commit an offense[.]" Ex. L at 20. Notably, Petitioner's contention that he was without the ability to form the intent to commit the crimes due to his intoxication with various substances would have been excluded by the state court. Therefore, even if counsel had raised the matter, there would have not been a different result. Counsel's performance was not deficient nor does Petitioner meet the prejudice prong of <u>Strickland</u>. As such, Petitioner is not entitled to relief on Ground Two-Part One.

### C. Ground Three

In Ground Three of the Petition, Petitioner claim his counsel's failure to alert the trial court that the sentence it was imposing was illegal amounted to ineffective assistance of counsel. Petition at 5. Respondents contend that Petitioner did not properly exhaust this ineffectiveness claim in the state courts. Response at 31.

The Court finds Petitioner did not exhaust the claim raised in Ground Three. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. As Petitioner is procedurally barred from raising Ground Three, he must demonstrate cause and prejudice. Petitioner has failed

24

to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claim on its merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that the claim in Ground Three is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of Ground Three.

Alternatively, apparently Petitioner concedes that his contention of an illegal sentence was remedied in the state courts, and "will thus not be raised to save judicial time and economy." Reply at 4. Indeed, the record demonstrates that Petitioner obtained relief from the state court through his Rule 3.800(b)(2) motion. Ex. E. The trial court corrected its error, and the clerk recorded a corrected judgment and sentence. Ex. F. No further relief is warranted.

### D. Ground Four

Next, the Court addresses Ground Four of the Petition. There, Petitioner raises a claim of cumulative errors on counsel's part, allegedly depriving Petitioner of a fair trial. Petition at 6. The postconviction court denied relief:

> In the Defendant's third ground for relief, he avers *he should be granted a new trial based upon cumulative effect of ineffective Counsel.* It is well-settled that a claim of cumulative error cannot stand

25

in cases where, following individual evaluation, alleged errors are found to be without merit or procedurally barred. Lukehart v. State, 70 So. 3d 503, 524 (Fla. 2011); see Suggs v. State, 923 So. 2d 419, 442 (Fla. 2005) (holding that when a defendant does not successfully prove any of his individual claims and, consequently, counsel's performance is deemed sufficient, a claim of cumulative error must fail); Parker v. State, 904 So. 2d 370, 380 (Fla. 2005) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit."). Here, Defendant has not demonstrated that counsel was ineffective under either prong of Strickland. Accordingly, Defendant is not entitled to relief[.]

Ex. L at 21. The First DCA per curiam affirmed the denial of postconviction relief without a written opinion. Ex. O.

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

---

[8] See Wilson, 138 S. Ct. at 1192.

presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, none of Petitioner's individual ineffectiveness claims warrant relief; therefore, there is nothing to accumulate. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Petitioner's trial counsel's alleged errors, neither individually nor cumulatively, deprived him of a fair trial or due process. Considering the record, the Court finds that Petitioner is not entitled to federal habeas relief on Ground Four.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Petitioner appeals the denial of the Petition, [9]  the Court denies a certificate of appealability. Because the Court has determined that a

---

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or

certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of October, 2023.

_____
BRIAN J. DAVIS
United States District Judge

sa 9/27
c:
Keshon B. Williams
Counsel of Record

---

that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.